**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ABINGDON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Case No. 1:18CR000018-001 |
| v. | ) | **OPINION** |
| **JUSTIN HALE,** | ) | JUDGE JAMES P. JONES |
| Defendant. | ) | |

*Whitney D. Pierce, Assistant United States Attorney, Abingdon, Virginia, for United States; Justin Hale, Pro Se Defendant.*

The defendant, Justin Hale, proceeding pro se, has filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, on the grounds that he suffered from ineffective assistance of counsel in connection with pretrial preparation, his guilty plea and his later sentencing. The United States has filed a Motion to Dismiss, to which the movant has not responded. After review of the record, I find that the defendant is not entitled to relief. Accordingly, I will grant the United States' Motion to Dismiss and deny the defendant's § 2255 motion.

I.

In 2016, law enforcement launched an investigation into the underlying conduct in this case, determining that Hale and his wife, Elizabeth Hale, were responsible for importing and distributing large quantities of ice methamphetamine

into the area. On October 31, 2017, Hale was arrested following a traffic stop. At the time of his arrest, Hale possessed approximately 2 or 3 ounces of crystal methamphetamine and $7,688. Hale cooperated with law enforcement. He admitted that "he had been a methamphetamine trafficker for the previous 9 months and ha[d] been sending $20,000 twice a week to his out-of-state crystal methamphetamine [source of supply]." Presentence Investigation Report (PSR) ¶ 7, ECF No. 194. He further "admitted to receiving approximately 4 pounds of methamphetamine twice per week," for "approximately 9 months." *Id.*

He was interviewed again later that day at the local jail, where he disclosed more information about the conspiracy. Specifically, he explained that he "initially paid $600 per ounce . . . and sold it for $800 or $900." *Id.* ¶ 10. He further stated that shipments of methamphetamine from his source in California increased from eight ounces of methamphetamine to "multi-pound shipments, usually in the 2 to 4 pound range with two shipments of 5 pounds each," although "he never received more than 10 pounds at one time." *Id.* at ¶ 10–11. On November 13, 2017, he again confirmed this amount in a follow-up statement to law enforcement.

On August 21, 2018, a grand jury indicted Hale and five other co-defendants in connection with a large scale, multi-state methamphetamine conspiracy. On January 23, 2019, Hale pled guilty, without a plea agreement, to two counts of the three-count Indictment. Count One charged Hale with conspiracy to manufacture,

distribute, and possess with the intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A). Count Two charged Hale with possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). Prior to sentencing, defense counsel filed objections to the PSR and moved for a sentencing downward departure or variance. The government filed a 15-year mandatory minimum sentencing enhancement based on Hale's two prior serious drug convictions and sought a two-level guideline enhancement for reckless endangerment during flight based on Hale's May 2, 2018, arrest.[1]

On June 17, 2019, this court held a sentencing hearing. The government presented evidence regarding the weight of methamphetamine, the purity of the methamphetamine distributed, and the circumstances of Hale's May 2018 arrest. Hale's retained counsel cross-examined the government's witness on each of those issues and argued at length in support of the defense objections to the PSR. The court overruled the objections and also denied the motion for downward departure

---

[1] According to the PSR, on May 2, 2018, law enforcement officers attempted to stop Hale while he was driving a car in order to execute a federal search warrant. Hale pulled over into a parking lot and after failing to comply with officers' requests to roll down the windows or open the car door, Hall backed his vehicle into the police car behind him. He then drove forward and rammed the police car parked in front of him. At this point, with Hale's car wedged between two police cars, officers were able to reach through the shattered driver's side door window of the car and tase Hale in order to subdue him. One officer sustained injuries during the incident.

or variance. The court found that Hale had a total offense level of 41 and criminal history category of III, which translated into a guidelines range of 360 months to life imprisonment. The court sentenced Hale at the bottom of his guidelines range — 360 months on each count, to run concurrently, followed by 10 years of supervised release on each count, to run concurrently.

Represented by the same attorney, Hale appealed, challenging the court's application of a two-level enhancement for reckless endangerment and arguing that the court abused its discretion in deny his motion for downward departure or variance and failed to adequate explain its reasons for the denial. He also argued that the court erred in refusing to reject the purity-driven methamphetamine guidelines range. On November 18, 2020, the Fourth Circuit, finding no error, affirmed the judgment. *United States v. Hale*, 834 F. App'x 789, 791 (4th Cir. 2020) (unpublished).

On October 6, 2021, Hale signed and dated his pro se § 2255 motion, and the court received and docketed the motion on October 12, 2021, well within the one-year statutory filing period. 28 U.S.C. § 2255(f)(1). In his motion, Hale contends that his retained trial counsel was ineffective on several grounds. On December 13,

2021, the United States moved to dismiss the motion. The matter is now ripe for a decision.[2]

II.

To state a viable claim for relief under § 2255, a defendant must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such sentence"; or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The movant must '"state facts that point to a real possibility of constitutional error.'" *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013) (citation omitted). "[V]ague and conclusory allegations . . . may be disposed of without further investigation by the District Court." *Id.*

Criminal defendants have a Sixth Amendment right to effective legal assistance. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). To prove ineffective assistance, the defendant must show two things: (1) "that counsel's representation fell below an objective standard of reasonableness"; and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the

[2] I will dispense with holding an evidentiary hearing on petitioner's *Strickland* claim because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

result of the proceeding would have been different." *Id.* at 688, 694. Such claims are not lightly granted: a petitioner must overcome the "strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021) (citation omitted).

A. CLAIM 1 – COUNSEL'S REPRESENTATION AT PRETRIAL STAGE.

Hale alleges that during the pretrial stage of his case, his attorney was ineffective: (a) by failing to file several pre-trial motions, specifically a motion to dismiss his charges, a motion to suppress evidence and witness statements, a motion for a bill of particulars, and a motion in limine; (b) by failing to investigate a claim of unconstitutional search and seizure; (c) by failing to request and argue grounds for a *Franks* hearing; (d) by failing to investigate and provide evidence of an injury claim to dispute the sentence enhancement for reckless driving; and (e) by failing to object to the government's evidence.

As an initial matter, Hale makes only vague and conclusory allegations in support of this claim. He provides no factual basis on which he could establish that his lawyer was ineffective in failing to file any of the pretrial motions. Hale also does not forecast evidence that his counsel would have uncovered by investigating an unconstitutional search or seizure claim, or even what search or seizure he is specifically referring to in his petition. Hale does not specify what evidence would

have been brought to light during a *Franks* hearing. Hale also does not identify any viable objections that counsel could have made about the government's evidence, or even what evidence he is objecting to being introduced. Accordingly, the court may dispose of these claims without further inquiry. *Dyess*, 730 F.3d at 359.

As to the remaining claim, Hale makes only conclusory statements about his attorney not investigating an injury claim related to his reckless driving sentencing enhancement. In any event, Hale could not satisfy *Strickland*'s prejudice standard. This issue was argued at length during the sentencing hearing and, as the court explained, an "injury" is not required to support the enhancement, only a "substantial risk" of injury. Sent'g Hr'g Tr. 33, ECF No. 271. The court determined that Hale's conduct — ramming two police vehicles — met that standard. *Id.* at 41–42. Whether counsel investigated the harm would not have changed the outcome.

B. CLAIM 2 – COUNSEL'S ADVICE ABOUT SPEAKING TO LAW ENFORCEMENT.

Hale alleges that his attorney was ineffective by erroneously advising him to speak to government agents without the presence of counsel, which violated his Fifth and Sixth Amendment rights. Specifically, he claims that his attorney stated, "[I]t will be okay they are just Good Ole Boys." 2255 Mot. 5, ECF No. 309.

The government relies upon an affidavit from Hale's trial counsel that provides an account of his representation, and which contradicts Hale's claims and explains in detail his advice on this issue. Gov't's Mot. to Dismiss Ex. 2, Scyphers'

Aff. 1–2, ECF No. 321-2. Specifically, his attorney attests that early in the case, when Hale first approached him about retaining his representation, he learned that Hale had "already been in contact with certain police officers." *Id.* at 1. He says that he advised Hale that he could either continue cooperating, in hopes of securing a more favorable sentence, or that he should stop speaking with law enforcement immediately. His attorney says that he explained to Hale that if he continued to cooperate, there may be times where he would not be present.

According to the PSR, Hale first spoke with law enforcement following his arrest on October 31, 2017. During the course of two separate interviews conducted on that day, Hale admitted that he was a methamphetamine trafficker and provided significant details about his distribution process, including the quantity of drugs in each shipment from his supplier and the amount charged for the drugs. The timing and substance of these interviews were confirmed by the testimony of Agent Brian Snedeker during the sentencing hearing. Sent'g Hr'g Tr. 5–9, ECF 271.

Based on these circumstances, Hale has failed to demonstrate ineffective assistance under both *Strickland*'s prejudice and deficiency prongs. First, Hale has not established that there would have been a different outcome in this case. Hale spoke with law enforcement *before* he retained trial counsel, and the government relied upon those initial statements for the purpose of calculating a drug weight.

Accordingly, Hale cannot prove that absent the advice of his counsel — even if erroneous — there would have been a different outcome in his case.

Hale has also not established that trial counsel's performance fell below an objective standard. It is not unreasonable for counsel to recommend that his client continue cooperating with the government where his client has already divulged, in great detail, the extent of his role and level of culpability in the conspiracy, including how much methamphetamine was involved and how it was distributed.

### C. CLAIM 3 – COUNSEL'S REPRESENTATION AT PLEA STAGE.

Hale's third claim of ineffective assistance alleges that his counsel performed deficiently before trial during the plea-bargaining stage, by: (a) failing to explain the details of his plea agreement; and (b) failing to challenge "the discrepancy in the drug quantity/weight from the plea agreement and lab reports, which would have made a difference in the sentencing." 2255 Mot. 7, ECF No. 309. He claims that he refused to sign the plea agreement because "counsel failed in providing petitioner understanding in the inaccurate drug quantity/weight," and that counsel coerced him into pleading guilty in open court. *Id.* Finally, he claims that counsel misled him that he would receive a 15-year sentence if he accepted the plea agreement.

The government provides an affidavit from Hale's trial counsel, in which he disputes Hale's allegations. Scyphers' Aff. 2–3, ECF No. 321-2. His lawyer attests that he did review the plea agreement with Hale and that they discussed the pros and

cons of going to trial, signing the plea agreement, or entering into an open plea. His lawyer maintains that he never coerced Hale into pleading guilty or promised that he would receive a particular sentence.

The Sixth Amendment right to effective assistance of counsel "extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). A defendant establishes prejudice by showing that but-for the ineffective assistance of counsel, there is a "reasonable probability" that he would have accepted a plea, that the court would have approved its terms, and that the resulting conviction or sentence "would have been less severe" than that actually imposed. *Id.* at 164.

Hale has failed to demonstrate ineffective assistance under *Strickland*'s prejudice prong. Hale has not put forth evidence that if he accepted the plea agreement, it would have resulted in a less severe sentence. At best, he is vague as to whether but for his lack of understanding of the drug weight issue, he would have accepted the plea agreement. In a recent decision, the Fourth Circuit held that a defendant was entitled to an evidentiary hearing on a claim that he was deprived of effective assistance based on counsel's incorrect sentencing advice. *Mayhew*, 995 F.3d at 181. There, the defendant explicitly claimed that his lawyer erroneously advised him that he would only receive two to five years' imprisonment if he went to trial, where the plea agreement offered zero to five years. But here, Hale does not claim this his attorney promised him a more favorable sentence if he rejected the

plea agreement and pleaded guilty in open court, or if he went to trial. To the contrary, he appears to claim that his attorney advised him that he would receive 15 years under the agreement, which, even if his attorney misled him, is half of his actual sentence of 360 months imprisonment. Because Hale did not accept the agreement, his claim of ineffective assistance based on his lawyer's failure to object to drug-weight discrepancies contain in it, even if true, would not have altered the outcome.

Finally, Hale affirmed under oath at his plea hearing that his plea was voluntary — that is, that his lawyer did not coerce him. Specifically, the court asked whether "anyone made any promise to you that caused you to want to plead guilty," or if "anyone threatened you or attempted in any way to force you to plead guilty in this case?" Guilty Plea Hr'g Tr. 11, ECF No. 272. In response to both questions, Hale replied, "No, sir." *Id.* He also agreed that he was "fully satisfied" with his lawyer's representation. *Id.* "[I]n the absence of extraordinary circumstances, . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conduct Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (citations omitted). To the extent that Hale's current claim contradicts his sworn statements, he has not demonstrated extraordinary circumstances, and the court will hold him to his word that his plea was voluntary.

D. CLAIM 4 – COUNSEL'S REPRESENTATION AT SENTENCING.

Hale claims that his trial counsel was ineffective: (a) by failing to object to the "extraordinary length" of his sentence; (b) by failing to use "exculpatory evidence for a lesser sentence"; and (c) by failing to object to "witness/hearsay statements to be used to attain a lesser sentence or lesser included offense." 2255 Mot. 8, ECF No. 309. The government argues these claims are vague and conclusory, and in any event, belied by the record. I agree.

Hale does not forecast what evidence, exculpatory or otherwise, his lawyer should have used to reduce his sentence, or what witness hearsay statements he should have objected to. And of course, hearsay rules govern only the admissibility of evidence at trial. The record from the sentencing hearing demonstrates that his lawyer filed objections to the PSR, moved for a downward departure or variance from the guidelines, and argued at length in support of a sentence below or at the low end of the guidelines. Although the court denied the motions, Hale received a sentence at the bottom of his guidelines range: 360 months. Hale has therefore failed to show that his lawyer was deficient under *Strickland*.

III.

For these reasons, I will grant the United States' Motion to Dismiss and deny the Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. A separate order will be entered herewith.

DATED: January 25, 2022

/s/ JAMES P. JONES
Senior United States District Judge